Mariana Muñoz **RIVERA de Torres, Jose Torres and the conjugal partnership formed between them, Plaintiffs,**

v.

**TELEFONICA de PUERTO RICO, Agustin Garcia, Ramon Arce, Baltazar de Jesus, William Perez Varela, John Doe, Richard Doe, ABC Corporation, XYZ Insurance Co., Defendants.**

**Civil No. 93–2403.**

United States District Court,
D. Puerto Rico.

June 23, 1995.

---

**34.** Docket no. 25, exhibit 1, at 37.

Lidia González Figueroa, Jaime Brugueras Cernuda, Hato Rey, PR, for Plaintiffs.

Gregory T. Usera MacFarlane, Goldman, Antonetti & Córdova, San Juan, PR, for Telefónica de Puerto Rico.

Mayra Maldonado–Colón, Puerto Rico Department of Justice, San Juan, PR, for Agustín García.

Marcos A. Ramírez–Lavandero, San Juan, PR, for Ramón Arce, Baltazar de Jesús.

Russel A. Del Toro, Hato Rey, PR, for William Pérez Varela.

### ORDER

CASELLAS, District Judge.

Plaintiffs Mariana Muñoz Rivera and José Torres, both personally and on behalf of their conjugal partnership, filed a complaint against defendants alleging sexual harassment, sex discrimination and retaliation in violation of the Civil Rights Act of 1991, 42 U.S.C. § 2000e–5 and several provisions of Commonwealth law prohibiting sexual harassment and discrimination in the workplace. Codefendants Ramón Arce and Baltazar De Jesús filed a motion for summary judgment, together with a brief in support and a statement of uncontested facts and exhibits (**docket # 42**) which plaintiffs opposed (**docket # 55**). Codefendants in turn replied to plaintiffs' opposition (**docket # 65**). By order of the Court, these motions were referred to Magistrate Judge Aida M. Delgado–Colón for her Report and Recommendation.

On March 15, 1995, the Magistrate Judge filed her report, recommending that codefendants' motion for summary judgment be

granted as to the federal claims under Title VII. In addition, she recommended that the Court not exercise its supplemental jurisdiction over any viable state law claim against Arce and De Jesús, in the absence of any other basis for federal jurisdiction. The Magistrate Judge based her decision on the undisputed facts regarding codefendants' actions in response to Ms. Muñoz Rivera's complaints of sexual harassment. Magistrate Judge Delgado found, as a matter of law, that there was no merit to plaintiffs' allegations that codefendants Arce and De Jesús did not timely and adequately investigate Ms. Muñoz Rivera's allegations of offensive behavior on the part of William Pérez Varela.

Plaintiffs objected to the Magistrate Judge's Report & Recommendation (**docket # 90**) but solely on the issue of the exercise of supplemental jurisdiction over plaintiffs' claims against Arce and De Jesús under Law 17, 29 L.P.R.A. § 155 et seq. Codefendants filed their own response to plaintiffs' objections (**docket # 93**), arguing in support of the Magistrate Judge's recommendations to the Court. Now, having considered all the arguments set forth by the parties, as well as the excellent discussion of the pertinent issues found in Magistrate Judge Delgado's Report & Recommendation, it is **ORDERED** that the Magistrate Judge's Report & Recommendation is hereby **APPROVED** and **ADOPTED** as our own. Consequently, the motion for summary judgment filed by codefendants Arce and De Jesús is **GRANTED**. Judgment shall be issued accordingly.

**SO ORDERED.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

DELGADO–COLON, United States Magistrate Judge.

On September 29, 1993, plaintiffs Mariana Muñoz–Rivera de Torres ("Muñoz–Rivera") and José Torres, both personally and on behalf of their conjugal partnership, filed a complaint against defendants Telefónica de Puerto Rico ("Telefónica"), Agustín García ("García"), President of Telefónica, Ramón Arce ("Arce"), former President of Telefónica, Baltazar De Jesús ("De Jesús"), Execu-

tive Vice–President at Telefónica, William Pérez Varela ("Varela"); former Assistant to Vice–President De Jesús, alleging sexual harassment, sex discrimination and retaliation in violation of the Civil Rights Act of 1991, 42 U.S.C. Sect. 2000e–5; the Puerto Rico Sexual Harassment Statute, Act No. 17 of April 12, 1988 ("Act 17"), P.R.Laws Ann. tit. 29, Sec. 155; the Employment Discrimination Statute, Act No. 100 of June 30, 1959, as amended, P.R.Laws Ann. tit. 29 Sec. 146 and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R.Law Ann. tit. 31 secs. 5141 and 5142. These claims stem from Varela's alleged sexual harassment and retaliation of plaintiff Muñoz–Rivera.

Now before us is the motion for summary judgment of co-defendants Arce and De Jesús, with a brief in support, and a statement of uncontested facts and exhibits (**Docket No. 42**) and their reply to the plaintiffs' opposition (**Docket No. 65**). Plaintiffs failed to file, as required by Local Rule 311.12, a separate statement of material facts which they allege are not at issue, with their opposition to summary judgment. As such, the defendants' statements were taken as admitted.

For the reasons stated below, we recommend that the motion for summary judgment of co-defendants Arce and De Jesús be granted and that the court not exercise its pendent jurisdiction over the plaintiffs' state law claims.

### A. BACKGROUND

Co-defendant Telefónica is a public corporation engaged in the telecommunications business in Puerto Rico. Plaintiff Muñoz–Rivera began working for Telefónica in July, 1986 as a secretary. From November, 1991 to January, 1993, co-defendant Arce served as President of Telefónica. During that time co-defendant De Jesús was an Executive Vice President of Telefónica. Co-defendant Varela, the party alleged to harassed Mrs. Muñoz–Rivera, occupied the position of Assistant to Executive Vice President De Jesús, and was the direct supervisor of the plaintiff from November, 1991 until August 1992. Plaintiff has been and remains an employee of Telefónica.

In August, 1992 the plaintiff complained to co-defendant Arce that she was being sexually harassed by co-defendant Varela. Before this time co-defendant Arce had no notice of any alleged offensive behavior by co-defendant Varela towards plaintiff. Co-defendants Arce and De Jesús confronted co-defendant Varela with the plaintiff's allegations. Co-defendant Varela denied the allegations that he ever sexually harassed the plaintiff.

Thereafter, co-defendants Arce and De Jesús met with the plaintiff and informed her that they had met with co-defendant Varela and that he denied her allegations. They also informed the plaintiff that co-defendant Varela was instructed not to talk to her and that she was to be physically relocated to another division. The plaintiff informed co-defendants Arce and De Jesús that she did not want to be relocated. Plaintiff was nevertheless relocated. After this date, the plaintiff did not complain of any further sexual harassment from co-defendant Varela or any other Telefónica employee.

An investigation of the plaintiff's allegations against co-defendant Varela was ordered by co-defendant Arce, by way of a letter from co-defendant Arce to a Mr. Cuebas, requesting that the plaintiff's allegations be investigated. Attorney Elisa Bobonis Lang ("Bobonis") was retained by Telefónica to conduct the investigation. On December 9, 1992, Bobonis presented her final report to co-defendant Arce, recommending that the plaintiff's administrative complaint be dismissed because the plaintiff had obstructed the administrative proceedings and failed to cooperate with the investigation. Plaintiff refused to sign the sworn statement prepared by Bobonis. In view of Bobonis' recommendation, the co-defendants Arce and De Jesús dismissed the plaintiff's administrative complaint. Plaintiff was notified of the dismissal of her administrative complaint on December 22, 1992.

The plaintiff now asserts that the investigation into her sexual harassment claim was "perfunctory" at best, and that co-defendants Arce and De Jesús had, therefore, failed to appropriately investigate her sexual harassment claim.

Co-defendants Arce and De Jesús reply that they properly responded to the plaintiff's allegations. Additionally, they argue, that for purposes of qualified immunity, the law has not clearly indicated whether the measures that they undertook in response to the plaintiff's allegations were objectively inadequate for purposes of preventing further harassment and, thus, clearly unlawful.

## B. *THE SUMMARY JUDGMENT STANDARD*

A federal court may grant summary judgment in a civil action "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Kenneth P. Wolf v. Gruntal & Co., Inc.*, 45 F.3d 524, 527 (1st Cir.1995); *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995). The Supreme Court fleshed out this rule in a trilogy of cases decided in the 1985–86 term. *National Amusements, Inc.*, 43 F.3d at 735 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). In general, these cases require that a party seeking summary judgment make a preliminary showing that there exists no genuine issue of material fact. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue. *Id.* (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553).

To satisfy the criterion of trialworthiness, and, thereby, forestall summary judgment, an issue must be "genuine;" that is the relevant evidence, viewed in the light most favorable to the party opposing the motion must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side. *Id.* (citing *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2511; *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975),

*cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)). Trialworthiness necessitates "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Id.* (citing *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355). "The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve...." *Id.*

Trialworthiness requires not only a "genuine" issue but also an issue that involves a "material" fact. *Id.* (citing *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510). *See also Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 7–8 (1st Cir.1990). In this context, the term "material" means that a fact has the capacity to sway the outcome of the litigation under the applicable law. *Id.* (citing *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also United States v. One Parcel of Real Property, Etc. (Great Harbor Neck, New Shoreham, R.I.),* 960 F.2d 200, 204 (1st Cir.1992)). If the facts on which the nonmovant relies are not material, or if its evidence "is not significantly probative," *brevis* disposition becomes appropriate.

■ In this district, Local Rule 311.12 assists the court in dealing with summary judgment mechanics. It requires the moving party to file a separate statement, with specific references to the record, of material facts that it alleges are not at issue. The nonmoving party must also file a separate statement stating the material facts that are allegedly at issue. Compliance with this rule is critical, since the court will only consider the facts alleged in the above mentioned statements when entertaining the movant's arguments. If the non-movant fails to comply with rule, the court will assume that the non-movant has admitted to the facts as they appear in the movant's statement. *See United States District Court for the District for Puerto Rico, Local Rules of the Court,* Rule 311.12 (Butterworth de Puerto Rico 1994).[1]

**1.** Plaintiffs, having failed to file a separate statement as the rule requires, are now presumed to have admitted the facts as detailed in their state-

## C. *"EMPLOYER" STATUS UNDER TITLE VII CLAIMS*

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an *employer* ... to discriminate against and individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. section 2000e–2(a)(1) (emphasis ours). Under this title an *employer* can be held liable for sexual harassment of its employees under either the quid pro quo theory, where an employer threatens to alter an employee's job conditions if the employee will not assent to the employer's sexual demands. See *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 897–98 (1st Cir.1988); *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1315 (11th Cir.1989), or the hostile environment theory, which is defined as "conduct ... so pervasive that it had the effect of creating an intimidating hostile, or offensive work environment." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986); *Andrews v. Philadelphia,* 895 F.2d 1469, 1482 (3rd Cir.1990); *Lipsett v. University of Puerto Rico,* 864 F.2d at 897–98.

■ Under Title VII, "suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate." *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993). "The relief granted under Title VII is against an employer, not individual employees whose actions would constitute a violation of the Act." *Id.; see also Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991); *Clanton v. Orleans Parish School Bd.,* 649 F.2d 1084, 1099 & n. 19 (5th Cir.1981); *see also* 42 U.S.C. section 2000e(b) (1988) (definition of "employer"); 42 U.S.C. Section 2000e–2 (1988) (violation for "employer" to discriminate); 42 U.S.C. section 2000e–5(g) (1988) (relief for violation of section 2000e–2). The proper method for plaintiff to recover under Title VII is, thus, by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the

ment of facts not in controversy, sworn statement, and exhibits of co-defendants Arce and De Jesús.

employer directly. *Id.* We conclude, therefore, that the suit against co-defendants Arce and De Jesús can only proceed against them in their official capacity; consequently, the suit against the individual corporate officers effectively operates as a suit against co-defendant Telefónica.[2]

The analysis therefore begins with the threshold determination of whether or not defendants Arce and De Jesús can be held liable as "employers" under Title VII.

■ In order to be subject to liability under Title VII, a defendants must (1) fall within Title VII's statutory definition of "employer" and (2) have exercised substantial control over significant aspects of the compensation, terms, conditions or privileges of plaintiff's employment. *Magnuson v. Peak Technical Services, Inc.,* 808 F.Supp. 500, 506 (E.D.Va.1992) (citing *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 611 F.Supp. 344 (S.D.N.Y.1984) (holding that the most important factor in determining "employer" status under Title VII is the "extent of employer's right to control means and manner of worker's performance.")).

Title VII defines "the term 'employer'" to include "a person engaged in an industry affecting commerce . . ., and any *agent* of such a person." 42 U.S.C. 2000e(b) (emphasis ours).[3] Unfortunately, "[n]owhere in Title VII is the term 'agent' defined."[4] *Sauers,* 1 F.3d at 1125 (citing *Barger v. Kansas,* 630 F.Supp. 88, 89 (D.Kan.1985)). More problematic though, is that even those

employers who have been found to satisfy the statutory definition of "employer" under Title VII, still may not be held liable under the statute unless they were found to have exercised the requisite control over the employment of the plaintiff. Not surprisingly, the precise nature and extent of the control necessary to qualify a defendant as an "employer" for Title VII has not been defined. *Magnuson,* 808 F.Supp. at 506.

What the sparse authority does reflect is that the term "employer" is to be "construed in a functional sense to encompass those who are not employers in conventional terms, but who nevertheless control some aspect of an individual's compensation, terms, conditions, or privileges of employment." *Id.; Bostick v. Rappleyea,* 629 F.Supp. 1328, 1334 (N.D.N.Y.1985) (quoting *Spirt v. Teachers Insurance and Annuity Association,* 475 F.Supp. 1298, 1308 (S.D.N.Y.1979), aff'd in part and rev'd in part on other grounds, 691 F.2d 1054 (2d Cir.1982), vacated and remanded on other grounds, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983)). This conclusion supports the broad and remedial purpose of Title VII that counsels against the adoption of a rigid rule that strictly limits "employer" status under the statute to an individual's direct or single employer.[5] It has been held that "an individual may be the employee" of more than one "employer" for purposes of Title VII. *Magnuson,* 808 F.Supp. at 507 (citing *Amarnare,* 611 F.Supp. at 349). In the case before us, both defendants Arce and De Jesús do appear to

---

2. The co-defendants argument that they are cloaked by "executive qualified immunity" is misplaced. Qualified immunity protects a public official from personal liability for money damages assessed for actions taken in an official capacity. Since Title VII liability attaches to an agent only as sued in an official capacity, there exists no threat of personal liability against which the doctrine of qualified immunity protects; therefore, the qualified immunity doctrine is inapplicable under Title VII. *See Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (citing *Harvey v. Blake,* 913 F.2d 226, 227–28 (5th Cir.1990)).

3. The First Circuit has not yet defined the term "employer" as it appears in section 2000e(b). *See Douglas v. Coca–Cola Bottling Company of*

*Northern New England, Inc.,* 855 F.Supp. 518, 520 (D.N.H.1994).

4. An "agent" has been defined as one who serves in a supervisory position and exercises significant control over hiring and firing. *See Douglas v. Coca–Cola Bottling Company of Northern New England,* 855 F.Supp. 518, 521 (D.N.H.1994) (citing *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989)).

5. It was the intention of Congress that Title VII proscribe employment discrimination "in the broadest possible terms" and that it "be accorded a liberal interpretation in order to effectuate the purpose of Congress to eliminate the inconvenience, unfairness and humiliation of [employment] discrimination." *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972).

have exercised some control over the plaintiff's employment. As a result, a closer examination of the plaintiff's relationship with co-defendants Arce and De Jesús is warranted in order to ascertain whether they may be held liable as the plaintiff's "employer".

After a review of the record, the only substantive facts which might lead us to conclude that co-defendant Arce and De Jesús had substantial control over the terms and conditions of the plaintiff's employment are the facts that (1) after she made her sexual harassment complaint to them, it was by their authorization that she was physically relocated from her regular workplace to another division of the company, and (2) they had the authority to initiate, as well as terminate, the investigation into the plaintiff's sexual harassment complaint.[6] Whether these facts alone are enough to grant these co-defendants the status of plaintiff's "employer" for Title VII purposes is uncertain. There are no facts specifically indicating that the co-defendants hired her or had the authority to fire her. We see no other facts which can assist us in determining whether the co-defendants Arce and De Jesús held "control of the means and manner of the worker's performance," which has been held as the most important factor in making a determination of who is an "employer" under Title VII. *See Amarnare,* 611 F.Supp. at 347–8.[7]

Having found the submitted evidence to have left these questions unresolved, we find that there are genuine issues of material fact which would warrant each of co-defendants Arce and De Jesús' status as an employer of the plaintiff for purposes of Title VII. But assuming that the plaintiff could succeed in establishing that these defendants are her employers under Title VII, we believe, nevertheless, that both co-defendant Arce and De Jesús are entitled to summary judgment on the plaintiff's specific Title VII claim.

## D. *TITLE VII CLAIM*

■ The plaintiff states in her complaint that she made a formal complaint of sexual harassment against the co-defendant Varela, to co-defendant Arce. She further states in her complaint, and we quote,

A few days later and after a perfunctory "investigation", Mr. Arce informed Mrs. Muñoz that he could not do anything about her complaint because Pérez–Varela had denied her charges and therefore there was nothing he could do. Mr. Baltazar De Jesús took no action to stop the sexual harassment against Mrs. Muñoz by Pérez–Varela.

Therefore, the only claim against co-defendants Arce and De Jesús is that they failed to adequately investigate her sexual harassment charge.

■ The Third Circuit has announced that under Title VII, respondeat superior liability exists when: "the defendant knew or should have known of the harassment and failed to take prompt remedial action." Thus, if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment and failed to take prompt and adequate remedial action, the employer will be held liable. *Foster v. Township of Hillside,* 780 F.Supp. 1026, 1039 (D.N.J.1992) (citing *Andrews v. Philadelphia,* 895 F.2d 1469, 1486 (3rd Cir. 1990) (internal citations omitted)).

The plaintiffs specifically allege that the actions taken by co-defendants Arce and De Jesús in response to her claim that she was sexually harassed by co-defendant Varela were not adequate. Because there is no factual dispute as to co-defendants Arce and De Jesús' actions,[8] and we find that as a

---

**6.** Although it can be assumed that as President and Vice–President of Telefónica, co-defendants Arce and De Jesús, must have had the authority to hire and fire plaintiff, we reserve the right to make a determination as their status as "employers" under Title VII in view of the absence of a definition under the Statute.

**7.** Plaintiffs' failure to comply with Local Rule 311.12 has made this task particularly difficult.

**8.** There is evidence to the effect that Arce and De Jesús called Varela to a meeting, confronted him with plaintiff's allegations and in spite of Varela's denial was instructed not to talk to or approach plaintiff. Later on, Muñoz was informed of the actions taken. Furthermore, defendants Arce and De Jesús retained the services of an attorney to further investigate the complaint and plaintiff

matter of law defendants "took prompt and adequate remedial action" in response to the plaintiffs' allegations, plaintiff's claim fails.

Courts who have decided the respondeat superior liability under Title VII have placed great weight upon whether the harassment ended after remedial steps were taken. *See e.g. Caleshu v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 737 F.Supp. 1070 (S.D.Mo. 1990) (the evidence was clear that once supervisor learned of the problem between plaintiff and the alleged harasser, he took immediate action. He talked to the alleged harasser and asked him to leave plaintiff alone. Of special importance, plaintiff testified that from that moment on, all harassment stopped and the employer Merrill Lynch was not held liable for the actions of the harasser); *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316 (11th Cir.1989) (Of special importance was that the harassment ended after remedial action and the corporate employer was held not liable for the alleged harasser's actions under the doctrine of respondeat superior liability).

Courts have also considered whether the employer investigated the alleged acts of harassment and the type of the investigation the employer conducted. *See Barrett v. Omaha National Bank*, 726 F.2d 424, 427 (8th Cir.1984) (where the court held that the employer had conducted an adequate investigation after having interviewed the alleged harassers, the alleged victim and co-employees who attended a seminar where the alleged harassment occurred).

In *Swentek v. USAIR, Inc.*, 830 F.2d 552, 558 (4th Cir.1987), the court refused to find respondeat superior liability basing its decision, in part, on the employer's prompt investigation. After the flight, attendant plaintiff reported that the pilot had harassed her, the director of flying read the plaintiff's complaint and questioned the pilot about the allegations. The pilot denied the plaintiff's more egregious charges which included grabbing her, but admitted that he had engaged in some unprofessional conduct. The director of flying interviewed other employees seeking corroboration of the plaintiff's complaint. The court in *Swentek* held that "in

taking remedial action, defendant (director of flying) was obliged to investigate [plaintiff's] allegations in order to escape liability." Thus, defendants did not have to credit plaintiff's allegations in order to avoid liability.

In the instant case, we find that the defendants took prompt and adequate action in investigating the plaintiffs' claims against co-defendant Varela, the alleged harasser. From the plaintiff's own testimony she claims that was sexually harassed on August 4th of 1992. She testified that she came to work on August 5th, but was absent August 6th and 7th. Upon returning to work on August 10th, she reported to co-defendant Arce that she had been sexually harassed by co-defendant Varela. The very next day on August 11, 1992, plaintiff was transferred to work in another division of the company. A meeting was immediately held between the plaintiff and co-defendants Arce and De Jesús where the plaintiff was informed that the co-defendant Varela had denied her allegations. On August 26, co-defendant Arce orders that an investigation be made into the plaintiffs allegations. On December 9, 1992, the attorney hired to investigate the plaintiff's complaint rendered her report in which she recommended that the plaintiff's administrative complaint be dismissed in light of her lack of cooperation and commitment to the investigation. After having received the report, on December 22, 1992, the plaintiff is informed that her administrative complaint was to be dismissed. The plaintiff also testified that she has not been sexually harassed by anyone at Telefónica since the August 4th incident, that incident which led to this instant case.

Therefore, in view of the applicable law analyzed above and the fact that: 1) upon learning of the charges, the co-defendants Arce and De Jesús immediately met with the alleged harasser, 2) the plaintiff was transferred to another division away from the harasser, 3) the alleged harasser was instructed not to approach plaintiff, 4) an independent investigation into the plaintiff's charge was ordered by the co-defendants, and 5) the plaintiff has testified that the

was relocated to avoid having her under Varela's supervision and control.

harassment has ended, we find the plaintiff's allegations that co-defendants Arce and De Jesús did not conduct a timely and adequate investigation meritless.

## E. *PENDENT JURISDICTION*

The Supreme Court held in *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), that a court can, in its discretion, exercise pendent jurisdiction over the state law claims where, "the state and federal claims derive from a common nucleus of operative facts." If the federal claims are dismissed before trial even though not insubstantial in the jurisdictional sense, the state claims should be dismissed as well.

Because we recommend that co-defendants Arce and De Jesús' motions for summary judgment be granted as to their federal claims, we also recommend that there be no exercise of pendent jurisdiction over the plaintiffs' state law claims in accordance with *Gibbs.*

For reasons discussed above, this Magistrate Judge **RECOMMENDS** that the co-defendants Arce and De Jesús' motion for summary judgment be **GRANTED** and their pendent state law claims Dismissed.

In accordance with Rule 510.2(A), Local Rules, District of Puerto Rico, any objections to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Borden v. Secretary of Health and Human Services,* 836 F.2d 4, 6 (1st Cir.1987) (per curiam). The objections must be in writing and "shall specifically identify the portions of the proposed findings."

**IT IS SO RECOMMENDED.**

At San Juan, Puerto Rico, on this 13th day of March, 1995.