**Emilio Oquendo DAVILA, Plaintiff,**

v.

**John E. POTTER, et al., Defendants.**

**Civil No. 03–1576 (FAB).**

United States District Court,
D. Puerto Rico.

June 21, 2007.

Rosa M. Nogueras, Nogueras De Gonzalez Law Office, San Juan, PR, for Plaintiff.

Fidel A. Sevillano–Del–Rio, Ginette L. Milanes, United States Attorney's Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

Plaintiff Emilio Oquendo Davila ("Oquendo") brings this action against John E. Potter, Postmaster General and the United States Postal Service ("the postal service") pursuant to Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701–796, alleging

discrimination due to Oquendo's disability and pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, alleging discrimination based on gender and retaliation.[1] Plaintiff also seeks to invoke this Court's supplemental jurisdiction over claims arising under the laws of the Commonwealth of Puerto Rico. *See* 28 U.S.C. § 1367.

Pending before the Court is Defendants' motion for summary judgment (Dkt. No. 28). Plaintiff filed an opposition to the motion (Dkt. No. 53), Defendants filed a reply (Dkt. No. 69), and Plaintiff filed a sur-reply (Dkt. No. 75). Defendants move for summary judgment on the grounds that (1) Oquendo has failed to exhaust administrative remedies as required by Title VII; (2) Plaintiff has not established a prima facie case of sex/gender discrimination or shown that he was subjected to hostile work conditions due to his gender in violation of Title VII; (3) Oquendo has not shown he was retaliated against for filing such claims; (4) Oquendo has failed to establish a *prima facie* case of disability discrimination because he does not show he is disabled under the law or that he requested reasonable accommodation; and (5) the postal service had a legitimate and nondiscriminatory reason for its actions. For the reasons set forth below, Defendants' motion for summary judgment is hereby **granted.**

## BACKGROUND

Plaintiff was an employee at the United States Post Office, 65th Infantry Station, located in San Juan, Puerto Rico. From 2002–2003 Martin Acevedo ("Acevedo") was the Station Manager. On March 26, 2002 a meeting was held in Acevedo's office where Oquendo was questioned regarding a work injury he sustained on March 22, 2002. Plaintiff claims he was treated inappropriately at this meeting and was subjected to shouting and intimidation from Acevedo. On April 18, 2002 Plaintiff filed an Information for Pre–Complaint Counseling with the EEO alleging discrimination based on his physical and mental disabilities.

Additionally, according to Oquendo, on May 8, 2002, Acevedo stared at him excessively and "followed him around" throughout the workday. On May 10, 2002 another meeting was held between Acevedo and Oquendo. Defendants claim Acevedo initiated the meeting to discuss Oquendo's performance problems, including failing to meet minimum standards and claiming unauthorized overtime. Oquendo maintains he requested the meeting to address the perceived harassment. Both Acevedo and Oquendo each claim the other became excessively hostile and aggressive at this meeting, culminating with Oquendo calling Acevedo "gay." Consequently Oquendo was suspended for the day. Oquendo never returned to work after May 10, 2002. On May 13, 2002 Plaintiff supplemented his affidavit filed in support of the EEO Information to include allegations of sexual harassment and retaliation based on his manager staring at him at work on May 8, 2002.

A formal EEO complaint was filed on October 3, 2002. In the Complaint, Oquendo explicitly indicates that he is alleging discrimination based on his disability and retaliation. Notably, he does not mark the box provided to indicate allegations of discrimination based on sex. Moreover Plaintiff only identifies March 26, 2002 as the date on which the incident

---

**1.** Plaintiff's claims pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, 42 U.S.C. §§ 1983, 1985, 1986 and 1988, the Family and Medical Leave Act, 29 U.S.C. §§ 2201 and 2202, and the Fair Labor Standards Act, 29 U.S.C. § 215, were previously dismissed. *See* Dkt. No. 108.

occurred and makes no mention whatsoever of the May 8, 2002 events. On February 24, 2003 the EEO Commission determined Oquendo had failed to state a claim for disability discrimination and/or retaliation and dismissed his complaint, notifying Plaintiff of his right to pursue a civil cause of action. Plaintiff commenced this lawsuit in the United States District Court for the District of Puerto Rico on May 29, 2003.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A genuine issue of fact exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining if a material fact is "genuine" the Court does not weigh the facts but, instead, ascertains whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The mere existence of a scintilla of evidence in support of the [nonmoving] party's position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252, 106 S.Ct. 2505.

In deciding a motion for summary judgment, the Court must review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmovant's favor. *LeBlanc* at 841. The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied the threshold requirement, the burden shifts to the nonmoving party to present facts that show that a genuine issue for trial exists. Fed.R.Civ.P. 56(e); *Anderson* at 256, 106 S.Ct. 2505. The nonmovant may not rest on mere conclusory allegations or wholesale denials. *See* Fed.R.Civ.P. 56(e); *Libertad v. Welch,* 53 F.3d 428, 435 (1st Cir.1995). Furthermore, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ To aid the Court in the task of identifying genuine issues of material fact in the record, the District of Puerto Rico has adopted Local Rule 56 (formerly Local Rule 311.12). D.P.R. L.Civ.R 56. Local Rule 56(b) requires that a party moving for summary judgment submit in support of the motion, a separate, short, and concise statement of material facts as to which the moving party contends there is no genuine issue to be tried. Further, "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation ..." D.P.R. L.Civ.R 56(c).

■ Local Rule 56 also clearly states that "[a]n assertion of fact set forth in a statement of material facts shall be fol-

lowed by a *citation to the specific page or paragraph of identified record material* supporting the assertion. *The Court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment.*" D.P.R. L.Civ.R 56(e) (emphasis added). It is insufficient to merely refer to an exhibit in general. Rather, parties must make specific reference to pages and/or paragraphs. Under the anti-ferret doctrine, the Court will not search through the entire record in an attempt to discern to what parties are referring in their briefs. *See Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 930–31 (1st Cir.1983); *Dominguez v. Eli Lilly & Co.,* 958 F.Supp. 721, 727 (D.P.R.1997) *(aff'd per curiam,* 141 F.3d 1149 (1st Cir.1998)).

■ The Court will only consider the facts alleged in the parties' Local Rule 56 statements when entertaining the movant's arguments. *Rivera v. Telefonica de Puerto Rico,* 913 F.Supp. 81, 85 (D.P.R.1995). Where the party opposing summary judgment fails to comply with the rule's requirements, the district court is permitted to treat the moving party's statement of facts as uncontested. D.P.R. L.Civ.R 56(c); *Alsina–Ortiz v. Laboy,* 400 F.3d 77, 80 (1st Cir.2005). "Parties ignore [such rules] at their peril." *Ruiz Rivera v. Riley,* 209 F.3d 24, 28 (1st Cir.2000).

■ In this case, Plaintiff fails to cite his qualifications and denials of Defendants' facts to the record properly. No specific page numbers and or paragraphs are given for multiple statements; rather Plaintiff merely references exhibits that span nearly 200 pages. Thus, Plaintiff's uncited statements shall not be considered by the Court. The First Circuit Court of Appeals "has held repeatedly that the district court in Puerto Rico is justified in holding one party's submitted uncontested facts to be admitted when the other party

fails to file oppositions in compliance with local rules." *Fontanez–Nuñez v. Janssen Ortho LLC,* 447 F.3d 50, 55 (1st Cir.2006) (quoting *Torres–Rosado v. Rotger–Sabat,* 335 F.3d 1, 4 (1st Cir.2003)). As such, Defendant's facts which have not been properly denied or qualified are deemed uncontested.

## DISCUSSION

### I. Gender Discrimination under Title VII

■ Title VII of the Civil Rights Act of 1964 protects federal government employees and applicants from discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–16(a). However, judicial recourse under Title VII is not a remedy of first resort. *Morales–Vallellanes v. Potter,* 339 F.3d 9, 18 (1st Cir.2003). An aggrieved party must first exhaust administrative remedies by filing a complaint with the employing agency before bringing a civil action for those claims. *Brown v. General Servs. Admin.,* 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). 42 U.S.C. § 2000e–16(c) clearly states that a civil claim may be brought within 90 days of notice of final action being taken by an administrative department, agency or unit, or after 180 days from the filing of an initial charge if there is a failure to take action on the administrative complaint. Thus "an employee may commence a civil action against [his] employer if, and only if, the EEOC has dismissed the administrative complaint or has itself failed to begin a civil action within 180 days of the original EEOC filing." *Jorge v. Rumsfeld,* 404 F.3d 556, 564 (1st Cir.2005).

■ The record indicates Plaintiff filed a formal complaint with the EEOC on October 3, 2002 alleging disability discrimination and retaliation due to the events

that took place on March 26, 2004. Despite Plaintiff amending his affidavit in support of the Information for pre-complaint counseling to include allegations of sex discrimination, these claims were not included in his formal complaint. There is no justifiable excuse for this omission; the formal complaint was filed on October 3, 2002, almost 5 months after Oquendo first raised the issue of sex discrimination. Plaintiff has not exhausted administrative remedies with regard to the sex/gender discrimination claims, thus failing to comply with the statutory requirements of Title VII. Accordingly, he is barred from resorting to the federal courts for relief. "In a Title VII case, a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door." *Jorge*, 404 F.3d at 564.

■ The Court need not inquire any further into the substantive Title VII claims of gender discrimination, because Plaintiff fails to cross the procedural threshold for filing such an action. The Court notes, however, that even if Plaintiff's Title VII claims were viable, there is insufficient evidence in the record to support such a claim. In order to sustain a Title VII cause of action, a plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). There is simply no evidence before the Court which demonstrates that Acevedo's or the postal service's treatment of Oquendo was at all related to his gender.

■ Plaintiff proffers that Acevedo staring at him throughout the day on May 8, 2002 constitutes a hostile work environment and/or sexual harassment. This argument is unsustainable. In order to establish such a claim, a plaintiff must show the harassment was so "severe and pervasive" that it altered the conditions of the

victim's employment and created an abusive working environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal citations omitted). To determine if a work environment is sufficiently hostile or abusive, courts look at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, whether it is a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Id.* at 788, 118 S.Ct. 2275. In this case none of these conditions are present. Furthermore, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* Oquendo's claims that his boss stared at him one day do not rise to the level of "severe or pervasive" conduct, nor does the act extend beyond that single, isolated incident. Oquendo's claims, even if accepted as true, simply do not meet the standard required for a viable cause of action under Title VII.

Plaintiff's discrimination and harassment claims asserted under Title VII are hereby **dismissed** due to Plaintiff's failure to exhaust administrative remedies.

## II. Retaliation under Title VII

■ According to the record, Plaintiff first established contact with an EEOC representative in April 2002 and filed a formal EEO complaint alleging disability discrimination and retaliation in October 2002. Approximately 1 month after Oquendo initially made contact with the EEOC, he alleges his supervisor stared at him one day at work in an intimidating manner and then became hostile and aggressive towards him during a subsequent meeting on May 10, 2002 in the supervisor's office. Plaintiff has not submitted any direct evidence of reprisal, but merely points to the staring and intimidation during the May 10, 2002 meeting as evidence

of retaliation.[2] "When only circumstantial evidence of discriminatory retaliation is available, the *McDonnell Douglas*[3] burden shifting analysis is ... utilized." *Rojas v. Principi*, 326 F.Supp.2d 267, 279–80 (D.P.R.2004). Under this analysis, Plaintiff must make a prima facie showing of retaliation by establishing 1) that Plaintiff engaged in a protected activity; 2) that he suffered an adverse employment action; and 3) that the adverse action is causally connected to the protected activity. *Che v. Massachusetts Bay Transportation Authority*, 342 F.3d 31, 37 (1st Cir.2003). Upon such a prima facie showing, the burden then shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the action in question. *Id.* at 39.

■ It is well settled that Plaintiff's EEOC contact in April 2002 is a protected activity. There is no evidence, however, of Oquendo suffering any adverse employment action. Being stared at by his manager one day and being yelled at during a meeting, absent additional repercussions, do not amount to adverse employment action. Even if the Court assumes, *arguendo,* that Oquendo's one-day suspension due to his behavior at the meeting constitutes an adverse employment action (despite Plaintiff's failure to make this argument himself), Plaintiff does not show that these two factors were causally related. Thus the third step of the analysis has not been met. The evidence simply does not establish that the meeting held between Acevedo and Oquendo on May 10, 2002 or Oquendo's subsequent one-day suspension were at all related to him having filed an EEO claim. Oquendo himself admits he called his supervisor "gay" at the meeting. It was this behavior, combined with his alleged loss of temper, that resulted in the suspension.

Furthermore, even if the Court were to accept that Oquendo's suspension was causally related to his filing of the discrimination claim, Defendant has established a legitimate, non-discriminatory reason for the action, namely Plaintiff's behavior at the meeting. There is nothing in the record to suggest that any of these actions were related to the fact that he filed a (largely unsubstantiated) EEOC complaint. The Court finds no evidence from which a reasonable jury could find that Plaintiff suffered averse employment action in retaliation for him having filed a discrimination complaint.

### III. Disability Discrimination under the Rehabilitation Act

■ The Rehabilitation Act as well as the Americans with Disabilities Act (ADA) were designed as civil rights statutes to protect the rights of and prevent against discrimination of an otherwise qualified individual based on his or her disability. Oquendo's claim is viable only under the Rehabilitation Act, which applies to federal agencies, contractors, and recipients of federal financial assistance; the ADA is not available to federal employees. *See Calero–Cerezo v. United States DOJ*, 355 F.3d 6, 12 (1st Cir.2004). Claims under the ADA and under the Rehabilitation Act, however, are analyzed under the same standards and the case law construing the ADA pertains equally to claims under the Rehabilitation Act.

---

**2.** Inexplicably, Plaintiff attempts to mislead the Court by claiming a 7–day suspension for failure to be in regular attendance is also evidence of retaliation. The Court's independent review of the record shows that this suspension was issued in January 2001, over a year before Oquendo even made contact with the EEOC, and that management agreed to rescind the suspension as part of an EEOC settlement agreement reached prior to the filing of the EEOC complaint. Plaintiff's lack of candor with this Court is inexcusable.

**3.** *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

*Phelps v. Optima Health, Inc.*, 251 F.3d 21, 23 n. 2 (1st Cir.2001); *Calero–Cerezo*, 355 F.3d at 19. To establish a claim under the Rehabilitation Act, a plaintiff must show (1) that he was disabled within the meaning of the statute, (2) that he was qualified to perform the essential functions of the job, either with or without reasonable accommodations, and (3) that despite his employer's knowledge of his disability, the employer did not offer a reasonable accommodation for the disability. *Id.* at 20.

### A. Disability

■■■ The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment". 42 U.S.C. § 12102(2). In determining whether a disability meets the standards of the statute, the Supreme Court has held that three conditions must be met: first, the court must determine whether the physical or mental condition qualifies as an impairment; second, the court must identify the life activity which is limited by the impairment and determine if it is a major life activity within the statute; and third, the court must decide whether the life activity is substantially limited by the impairment. *Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

At no point anywhere in his Response in opposition to Defendants' motion for summary judgement does Plaintiff ever identify a physical or mental impairment. In his 36–page filing, including 8 pages devoted entirely to the Rehabilitation Act claim, Oquendo never once identifies the condition or affliction from which he claims to suffer. Plaintiff cryptically refers to a "medical condition," a "disability," "physical and mental impairments," and once to the need for a "orthopedic seat", but a specific ailment is never identified.[4] Moreover, Plaintiff does not properly identify any impairment in his statement of facts.[5] As explained above, the Court will only consider the facts alleged in the parties' Local Rule 56 statements when entertaining the movant's arguments. *Rivera v. Telefonica de Puerto Rico*, 913 F.Supp. 81, 85 (D.P.R.1995). Because Plaintiff has not alleged any specific impairment, with proper citation to an accompanying exhibit, the Court must proceed on the grounds that none is alleged. The Court cannot begin to guess about Oquendo's medical history or any present ailments. Accordingly, the first prong of the *Bragdon* test cannot be met; there is no evidence of any physical or mental condition, much less that it qualifies as an impairment under the applicable law.

Even if the Court were to assume that this mysterious impairment actually exists,

---

**4.** In his Response (Dkt. No. 54), Plaintiff refers the Court to Exhibits 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 21 without designating any specific page numbers or enlightening the court as to what it is supposed to be looking for. The Court reiterates its unwillingness to ferret through the entire record to uncover facts that are not explicitly provided. *See* discussion, *supra.*, regarding the anti-ferret doctrine; *see also Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 930–31 (1st Cir.1983); *Dominguez v. Eli Lilly & Co.*, 958 F.Supp. 721, 727 (D.P.R.

1997) (*aff'd per curiam*, 141 F.3d 1149 (1st Cir.1998)).

**5.** In paragraph 14 of his Opposition to Defendants' statement of undisputed fact (Dkt. No. 52), Plaintiff makes brief mention of depression, carpal tunnel syndrome, and thoracic outlet syndrome. However, this paragraph is not supported by any record citation. Accordingly, the Court deems it unadmitted. *See* D.P.R. L.Civ.R 56(e) ("The Court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment.")

Plaintiff does not identify any life activity that is substantially affected. Hence the second prong of *Bragdon* also is not established. As such, it is inherently impossible for the third prong to be evaluated either. Simply put, Oquendo fails to qualify as a disabled individual under the statute. The Court need not go further in its analysis to reach the issue of reasonable accommodations given Plaintiff's inability to meet this initial threshold.

## B. Reasonable Accommodations

 The Court, for the sake of completeness, notes that Plaintiff's Rehabilitation Act claim also fails due to the fact that Oquendo does not show he requested and was denied reasonable accommodation for his "disability". Discrimination under the Rehabilitation Act includes not only offensive actions against disabled persons, but also includes failing to make reasonable accommodations for an individual's disabilities. An employer discriminates against a qualified individual with a disability when the employer does "not make reasonable accommodations to the known physical or mental limitations of the individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A). Nowhere in his Response does Oquendo ever make mention of requesting accommodation. There is also absolutely no mention of the postal service ever refusing such a request. Moreover, Defendants' uncontested statement of fact No. 15 states, "Plaintiff has never brought in any paperwork to support a request for reasonable accommoda-

tion." In accordance with the Local Rules, Plaintiff was required to properly admit, deny, or qualify this statement. Plaintiff does not do so.[6] This statement is therefore deemed uncontested and admitted. As there is no evidence of a request for accommodation, nor evidence of the postal service's denial of same, it is impossible for a reasonable jury to find in favor of Plaintiff on this Rehabilitation Act claim.

## CONCLUSION

 In view of the aforementioned, the Court hereby **grants** Defendants' motion for summary judgment as to the ADA and Title VII claims. The Court declines to exercise jurisdiction over the remaining supplemental Commonwealth claims. Judgment dismissing the federal claims with prejudice and the Commonwealth claims without prejudice shall be entered accordingly.

**IT IS SO ORDERED.**

---

6. The anti-ferret doctrine is again applicable, as Plaintiff merely refers the Court to general exhibits without any specific reference to paragraph or page number. *See* discussion, *supra*. As such, Plaintiff's statement shall not be considered and Defendants' fact is deemed uncontested. *See* D.P.R. L.Civ.R 56(c)

("Where the party opposing summary judgment fails to comply with the rule's requirements, the district court is permitted to treat the moving party's statement of facts as uncontested."); *Alsina–Ortiz v. Laboy*, 400 F.3d 77, 80 (1st Cir.2005).