Emma DEL VALLE FONTANEZ, on her own behalf and as mother of her children Aracelis, Mariel and Marisel Guzmán, Plaintiff,

v.

Julio APONTE, in his personal capacity and as Regional Director or employee of the Department of Transportation and Public Works of the Commonwealth of Puerto Rico; the Department of Transportation and Public Works of the Government of Puerto Rico; John Doe and Richard Doe, as Unknown Defendants.

Civ. No. 86–0429 (JP).

United States District Court, D. Puerto Rico.

April 13, 1987.

---

José Pagán Nieves and José R. Franco, Hato Rey, P.R., for plaintiff.

Victor Miranda Corrada, Federal Litigation Div., Justice Dept., San Juan, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

This is an action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, 29 L.P.R.A. § 146 and Law 69 of July 6, 1985. Plaintiff alleges sexual harassment at the workplace against her supervisor Julio Aponte.

A non-jury trial was held February 17–19, 1987, where both parties presented their witnesses and submitted documentary evidence. Upon the conclusion of the trial, the parties submitted the case to this Court for adjudication.[1] After due deliberation, this Court now makes the following findings of fact and conclusions of law.

### A. FINDINGS OF FACT

1. Plaintiff, Emma del Valle Fontanez, presently forty years of age and a resident of Guayama, Puerto Rico, was employed by the Department of Transportation and Public Works (DTPW). Plaintiff was appointed to the transitory position of Worker I on April 23, 1980, and in 1984 she was appointed to the position of Worker II. Her primary functions included working as a receptionist, photocopying materials, filing documents, and opening correspondence, among other clerical tasks.

2. Defendant Engineer Julio Aponte, presently sixty one years of age and a resident of Guayama, Puerto Rico, is the Guayama Regional Director of DTPW. Plaintiff and defendant work in the same office area. The primary functions of defendant is to implement the Government's projects and policies concerning the improvement and maintenance of transportation and public works in the Guayama district. In order to accomplish this task he supervises about fifty employees, including the plaintiff.

3. Plaintiff testified that on April 2, 1985, the defendant called her to his office, locked the door behind her and pressed her against the door with his body. She testi-

---

1. In her complaint, which is grounded in federal question jurisdiction, plaintiff demanded a trial by jury. However, it is well settled that an action arising under Title VII, which is equitable in nature, does not carry with it the right to a jury trial. *Lehman v. Nakshian,* 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981); *Olin v. Prudential Ins. Co. of America,* 798 F.2d 1, 7 (1st Cir.1986). A plaintiff may have a right to a jury trial only where the Title VII claim is mixed with other, legal claims, and the plaintiff would be entitled to a jury trial on the legal claims. *Olin,* 798 F.2d at 7.

The Court entertained the claims under 29 L.P.R.A. § 146 and Law 69 under its pendent jurisdiction. Section 146 and Law 69 prohibit employment discrimination based on sex. These statutes authorize relief in excess of that available under Title VII, by authorizing the Court to award twice the amount of damages incurred by the plaintiff, among other civil remedies. While these claims may be legal, under the Civil Code, there is no right to a jury trial. Accordingly, before the trial, the Court dismissed the jury with the agreement of the parties.

Because plaintiff presented no violation of the Equal Protection Clause, the claim thereunder is dismissed.

fied that the defendant did not embrace or grab her. However, she stated that she felt defendant's erect sexual organ against her body. Plaintiff pushed defendant away telling him not to take such liberties with her, but he forced himself upon her again seconds later. Plaintiff did not leave his office immediately, stating that she stayed until she could resolve the situation. The alleged sexual advance lasted a period of five (5) minutes and there were no witnesses.

4. Mrs. Del Valle Fontanez further testified that she had always seen Aponte as a father figure and that the only time defendant made any sexual advances to plaintiff was on that day, in the above-described episode. Before and after that date, Aponte and Mrs. Del Valle Fontanez maintained a purely professional relationship.

5. Laura Torres Sánchez, a co-worker and personal friend of plaintiff, testified that on April 2, 1985, plaintiff told her her version of what transpired in Aponte's office. According to Ms. Torres Sánchez, plaintiff was nervous and upset.

6. The last witness presented by the plaintiff was Dr. Jiménez Blazquez, a psychiatrist. The doctor testified he had seen plaintiff nine (9) times from October 1985 to present. However, it was not until October 1986 that Dr. Jiménez Blazquez asked plaintiff to explain the facts and circumstances which gave rise to the sexual advance. The doctor asked plaintiff this information because on October 1986, he learned that plaintiff had filed a lawsuit and intended to use him as a witness. Moreover, Dr. Jiménez Blazquez could not tell the Court the nature of the advice and counseling given the patient at any one of the nine occasions that plaintiff visited him. His testimony did reveal that, on every visit, medication was prescribed to the patient, her symptoms were always the same, her diagnosis had not changed, and that her prognosis was good.

7. María Isabel Cora is the Administrative Supervisor of the DTPW in Guayama and has known plaintiff for eight or nine years. She testified that as plaintiff's supervisor she had observed problems with plaintiff in her job performance. First, plaintiff was a receptionist in charge of receiving business calls at the DTPW and channeling them to the appropriate offices. Before April 1985, Ms. Cora had received numerous complaints from citizens regarding the phone service at the DTPW. They told Ms. Cora that the phone was always busy and that when it rang nobody answered it. Second, Ms. Cora had observed for quite some time that plaintiff spent long periods of time on personal conversation with fellow co-workers and away from the DTPW switchboard. Ms. Cora decided that the problems with the telephone was due to plaintiff's personal calls and extended talks with fellow co-workers.

8. In order to remedy the situation, Ms. Cora met with plaintiff and asked her to refrain from the foregoing conduct and perform her duties. Ms. Cora discussed this problem with Aponte prior to April 1985, who had also observed the situation. Notwithstanding Ms. Cora's directive, plaintiff continued to be away from the telephone and spent much time on personal conversations with co-workers. Ms. Cora again discussed the problem with Aponte.

9. Aponte testified that Ms. Cora had called to his attention plaintiff's failure to perform her duties in a professional manner. He further testified that, on April 2, 1985, he summoned plaintiff to his office in order to discuss her conduct. Aponte stated that he also observed plaintiff away from her desk for long periods of time conversing with her co-workers. Moreover, he conducted telephone cross-checks in order to determine whether plaintiff was properly conducting her duties. Defendant verified Ms. Cora's concerns regarding plaintiff.

He testified that the April 2, 1985 meeting between plaintiff and Aponte was limited to an inquiry concerning plaintiff's failure to properly perform her duties. At no time did Aponte make any sexual advances towards plaintiff nor discuss with her anything but her job performance. When plaintiff entered defendant's office, he was behind his desk and remained there until she left his office.

10. In May 1985, Ms. Cora and Aponte noticed that plaintiff's job performance remained unchanged. Consequently, Ms. Cora and Aponte decided to transfer plaintiff from the telephone switchboard to the photocopy machine, in order to remedy the complaints received from citizens and clients. Furthermore, at the photocopy machine area, Ms. Cora could maintain better supervision over plaintiff due to its location and the nature of the work. However, shortly after plaintiff was transferred, she stopped going to work and filed a claim for disability compensation with the State Insurance Fund alleging sexual harassment at the workplace. The State Insurance Fund denied her claim after an evaluation by a psychiatrist, Dr. Font. Plaintiff appealed the determination to the Industrial Commission, which affirmed the State Insurance Fund's determination. Plaintiff has refused to go back to her job at the DTPW despite the fact that, since August 1985, she has been granted leave without pay by the defendant.

11. We conclude and adopt as our finding Aponte's testimony to the effect that he did not sexually harass plaintiff; also that he summoned her to his office for legitimate employment reasons, namely: (a) that plaintiff spent long periods of time conversing with co-workers which caused her to be away from the reception desk; (b) that numerous citizens registered complaints regarding their inability to communicate with the personnel at the DTPW; and (c) the several telephone cross checks he had conducted to verify his observations. Furthermore, we conclude and adopt as our finding Ms. Cora's testimony concerning plaintiff's failure to perform her duties in a professional manner, the reason why she was transferred to the photocopy machine, and Aponte's reputation. Finally, Aponte did not make sexual advances to plaintiff prior to or after April 2, 1985.

## B. CONCLUSIONS OF LAW

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) makes it "an un-

lawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's...." The Supreme Court recently held that sexual harassment at the workplace is a violation of Title VII. *Meritor Savings Bank v. Vinson*, — U.S. ——, 106 S.Ct. 2399, 2404–06, 91 L.Ed.2d 49 (1986). The Court focused on the phrase "terms, conditions, or privileges of employment," in holding that Title VII is not limited to economic or tangible discrimination. *Meritor*, 106 S.Ct. at 2404. But the Court was clear in stating that not all sexual harassment is a violation of Title VII. The Court held that for "sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor*, 106 S.Ct. at 2406.

The Court relied on the Equal Employment Opportunity Commission's (EEOC) guidelines in defining sexual harassment at the workplace. The EEOC defines sexual harassment as "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature ... when ... (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating or intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a) (1985). The Court made clear that the focus is not on what the plaintiff voluntarily agreed to, but the inquiry is on whether the sexual advances or other conduct of the defendant were "unwelcome." *Meritor*, 106 S.Ct. at 2406.

In the case at bar, the plaintiff alleges that defendant summoned her to his office, and behind locked doors, twice forced his body upon hers. After she repelled him, she complains, at some later point in time he condemned her from the reception area to less interesting work at the photocopy machine, causing her severe emotional trauma and distress.[2] As previ-

**2.** Plaintiff may not recover an award of damages for mental harm or emotional distress resulting from a Title VII violation. *See Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir.

ously stated in the findings of fact, the Court is not able to find credible evidence that this alleged sexual advance occurred. Mrs. Del Valle Fontanez' allegation and testimony were clearly rebutted by the testimony of Ms. Isabel Cora and defendant. For many months and after continuous reprimand, plaintiff spent long periods of time away from the reception desk which led to numerous complaints by citizens who could not communicate with the DTPW. For this reason, Mr. Aponte, on the basis of his own observations and discussions with Ms. Cora, transferred plaintiff to the photocopy area. We therefore find that Mrs. Del Valle Fontanez failed to establish a case of sexual harassment.[3]

■ Assuming the facts as Mrs. Del Valle Fontanez alleged were true, the harassment would not have been so sufficiently severe or pervasive to create an abusive working environment. This is not to say that a single sexual advance could not constitute sexual harassment. The jurisprudence prior to *Meritor* seemed to say that isolated instances of a discriminatory nature would not state a cause of action under Title VII. *Katz v. Dole,* 709 F.2d 251, 256 (4th Cir.1983); *Bundy v. Jackson,* 641 F.2d 934, 943 n. 9 (D.C.Cir.1981). However, as enunciated in *Meritor,* the test is not whether there was a certain pattern of conduct, but whether there existed sexual harassment that was so severe or pervasive to create an abusive working environment. The EEOC guidelines explicitly state that a determination of sexual harassment requires an examination of "the record as a whole and [of] the totality of the circumstances." 29 C.F.R. § 1604.11(b) 1985. Under *Meritor* and the EEOC guidelines, it is conceivable that a single incidence of sexual aggression could, on the whole, constitute a case of sexual harassment actionable under Title VII. However, such is not the case here.

For the above reasons, the complaint is DISMISSED, and the Clerk shall enter Judgment accordingly.

The Clerk shall act accordingly.

IT IS SO ORDERED.

---

1982); *Bundy v. Jackson,* 641 F.2d 934, 946 n. 12 (D.C.Cir.1981) (collecting cases). Title VII only allows a Court to award reinstatement, back pay or any other appropriate equitable relief. 42 U.S.C. § 2000e–5(g) (1981).

**3.** Likewise, we find no case of sexual harassment under 29 L.P.R.A. § 146 or Law 69. We find no authority to the effect that the test for sexual harassment under the local statutes is less stringent than under Title VII. Arguably, this case should be brought in local, rather than federal court. In plaintiff's prayer for relief she sought no equitable remedies that Title VII allows, except for attorney's fees, which is usually pleaded as a matter of course. She sought no back pay, because she was not fired, nor did she request reinstatement or a cease and desist order. Rather, she sought damages for mental and emotional suffering, which, of course, is not recoverable under Title VII. *See* note 2, supra.