Elba Colón HERNÁNDEZ, Plaintiff,

v.

Patrick WANGEN et al., Defendants.

Civil No. 95–1611 (HL).

United States District Court,
D. Puerto Rico.

Aug. 1, 1996.

Maricarmen Almodovar–Diaz, Hato Rey, PR, for Elba Colón–Hernández.

Rafael Cuevas–Kuinlam, Hato Rey, PR, Antonio Cuevas–Delgado, Cuevas, Kuinlam & Bermudez Banco de Ponce, Hato Rey, PR, for Patrick Wangen, Palmas Del Mar Homeowners Association, Inc.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiff, Elba Colón Hernández ("Colón"), formerly an administrative assistant at the Palmas del Mar Homeowners Association, Inc. ("P.M.H.O.A.") from April 3, 1989 until February 25, 1994, has filed a sexual harassment suit against her supervisor Patrick Wangen, the Executive Director of the P.M.H.O.A. since 1981, and the P.M.H.O.A. Defendants have moved for partial summary judgment. Plaintiff opposes the requested relief. The Court shall apply the well-settled standard of review on a motion for summary judgment. *See Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894–95 (1st Cir. 1988).

On the one hand, Defendants argue that there are no genuine issues of material fact in dispute regarding three legal matters: (1) the severity or pervasiveness of the alleged sexual harassment under Title VII; (2) the 300 day statute of limitations under Title VII; and, finally, (3) Plaintiff's claim of retaliation. Because the Court concludes that there are genuine issues of material fact in dispute, Defendants' motion for summary judgment on these claims is denied.

On the other hand, however, Defendants persuasively argue that there is no genuine issue of material fact in dispute regarding the personal liability of co-Defendant Wangen under Title VII. The Court, therefore, grants co-Defendant Wangen's motion for summary judgment and dismisses Plaintiff's Title VII claim against Wangen with prejudice. Simultaneously, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims against Wangen and, therefore, dismisses Plaintiff's claims against him under Law 17, Law 69, Law 100, Article 1802, and the Puerto Rico Constitution without prejudice.

## I.  FACTS: [1]

In 1972, the residents of Palmas del Mar in Puerto Rico formed a homeowners association called P.M.H.O.A. to maintain the community property and enforce all of the community's covenants and restrictions. A board of directors representing the corporate owners and the homeowners manage the association. Because the board only meets six times each year, the association established an office in Palmas del Mar with five full-time employees to manage the properties. Since 1981, Patrick Wangen, a co-Defendant in this case, held the highest position in the association as the Executive Director.

On April 3, 1989, Wangen hired Plaintiff as his administrative secretary. Plaintiff's duties included distributing the correspondence of the P.M.H.O.A. employees and residents, addressing complaints about the Cable TV Service, preparing minutes for the Board of Directors' meetings, and distributing parking permit signs for the residents of the community. According to Plaintiff, while Plaintiff attempted to complete her duties, Wangen created a sexually hostile and abusive environment.

Plaintiff alleges that Wangen frequently made sexually explicit remarks to her or around her.[2] These comments included: (1) stating that the women of Puerto Rico are the most beautiful women in the world and that the best combination was an American man with a Puerto Rican woman; (2) stating that Plaintiff should be glad that she was not his wife; (3) asking Plaintiff up close whether she knew what a "nooner" was and later stating that a "nooner" was a person who had sexual relations at noon; (4) commenting that Plaintiff was going out with a man older than him; (5) mailing Plaintiff a small card on which he wrote: "My irreplaceable assistant, welcome back, I miss you. Pat;" (6) asking her what type of gift she wanted upon his return from a trip; and (7) throwing pornographic material on Plaintiff's desk and asking her to select a few of the movies that they could watch together.[3]

The latter "pornographic incident" began when an advertisement for video cassettes addressed to Wangen arrived in the mail from the Institute of Video Research. After Wangen received the material, he told Plaintiff that she liked action movies and threw the material on her desk. When another employee suggested that Wangen buy a few of the videos for educational purposes, Wangen commented that he was waiting for Plaintiff to order the videos that she liked. While Wangen made these comments, Plaintiff read the first two sentences of the correspondence which states: "Why have the new wave Slice of Life videos become the most sought after hard-core videos in the U.S.? Why have these raw, explicitly, unbelievably kinky explorations into anal, oral and genital love struck such a responsive cord." Plaintiff considered the material pornographic and felt humiliated when Wangen and another employee proceeded to laugh about the entire incident.

Plaintiff also alleges that Wangen frequently touched her physically without her consent or approval. Plaintiff asserts that Wangen (1) spanked her on the buttocks at a social gathering of the office and the maintenance people, (2) spanked her on the buttocks at a photography session during a so-

---

1. In summarizing the facts, the Court construes all material facts and reasonable inferences drawn therefrom in the light most favorable to Plaintiff. Many of the facts, particularly those that discuss the history of the P.M.H.O.A., are uncontested by Plaintiff and, therefore, have been deemed admitted under Local Rule 311.12. *See Tavarez v. Champion Products, Inc.,* 903 F.Supp. 268, 270 (D.P.R.1995).

2. The Court shall not consider three additional allegations that Plaintiff asserts in her opposition to Defendants' summary judgment motion. Plaintiff asserts that: (1) Wangen asked her if she knew what a "quickie" was; (2) stated that Plaintiff should wear a bikini like the one he was showing her in a magazine; and (3) told Plaintiff that she would like a nightgown that he was showing her in a magazine. Plaintiff fails to substantiate these three claims with any evidence including an affidavit or deposition testimony. Consequently, the Court shall not consider any of these allegations when ruling on Defendants' motion for summary judgment.

3. During his deposition, Wangen admitted that he commented about the beauty of Puerto Rico's women, that he asked another individual what a "nooner" was in front of Plaintiff, and that he asked if she was glad that she was not his wife.

cial gathering of the P.M.H.O.A. staff, (3) stepped behind Plaintiff in the office kitchen and rubbed her neck up and down while stating that he did not know whether he liked her better with short hair or long hair, (4) played around with Plaintiff's headset while she had it on, and (5) touched her legs when reaching for the diskette file underneath Plaintiff's desk.[4]

Finally, Plaintiff also alleges that Wangen and other employees perpetuated an abusive environment through several nonsexual hostile and offensive acts. Plaintiff complains that Wangen demanded that she perform data entry tasks for two consecutive months, limited her responsibilities by telling her not to resolve any further problems of the homeowners, and occasionally told her not to return to work after taking her vacation. Furthermore, on November 15, 1993, Plaintiff alleges that several members of the Board of Directors made sexual jokes concerning a "Super Selective Sucking Machine." The members laughed about how the beach cleaning machine really "sucks" effectively. Embarrassed and humiliated by the implications of the conversation, Plaintiff asserts that this meeting contributed to the abusive environment.

Plaintiff complained about the hostile environment at least four times. First, in late 1992, Plaintiff complained to P.M.H.O.A.'s director Luis Rivera about Wangen spanking her buttocks during a photography session and other similar offensive behavior. Second, in September 1993, Plaintiff again voiced her concerns about Wangen's conduct to Luis Rivera. Initially, Rivera advised Plaintiff to draft a letter to the President of the P.M.H.O.A. describing Wangen's offensive actions. After Plaintiff complied and drafted a letter mentioning the "pornography incident" and other offensive sexual behavior, Rivera changed his mind and told Plaintiff that the letter was unnecessary. Rivera informed Plaintiff that everything was better. Third, on November 1, 1993, Plaintiff complained to the President of the P.M.H.O.A. about the "Super Selective Sucking Machine"

board meeting. In response, the President apologized on behalf of the Board for causing any discomfort to Plaintiff, explained that the comments made during the meeting were not intended to have any sexual connotations, and warned each of the Board members that such comments offended Plaintiff.

Finally, on November 4, 1993, Plaintiff met with several of the members on the Board of Directors to discuss Wangen's sexually harassing behavior. At this meeting, Plaintiff complained about the "pornography incident," the spanking of her buttocks, Wangen's use of "bad words," and the pressure Wangen imposed upon her by constantly inquiring into what she was doing and limiting her work related responsibilities. As a result, the Board met with Wangen and warned him that if the allegations turned out to be true he would be subject to disciplinary action including an involuntary dismissal from his position. In response, Wangen wrote a letter to the Board vehemently denying that these incidents involved sexual harassment. Wangen asserted that Plaintiff was bringing these false allegations in retaliation for the negative evaluations that she received from him and the gradual alteration in her job responsibilities.

Despite Plaintiff's repeated complaints, Plaintiff maintains that P.M.H.O.A. did absolutely nothing to stop Wangen from creating a hostile work environment. According to Plaintiff, P.M.H.O.A. did not conduct an investigation, did not discipline Wangen, and never reprimanded him for his conduct. Consequently, on February 17, 1994, Plaintiff filed a sexual harassment complaint with the Equal Employment Opportunity Commission ("E.E.O.C.") describing in detail many of the allegations of sexual harassment. Eight days later, on February 24, 1994, P.M.H.O.A. informed Plaintiff that her position as administrative secretary had been eliminated to save money for the homeowners and, as of 5:00 P.M. that same day, she was no longer an employee of P.M.H.O.A.

P.M.H.O.A. maintains that, at the request of the Palmas del Mar homeowners, it initi-

---

**4.** Wangen admits that he spanked Plaintiff's buttocks during a social gathering but denies the rest of the allegations.

ated several major changes in its operations in 1992 and 1993 which included the elimination of Plaintiff's administrative assistant/secretary position. The elimination of Plaintiff's position, in addition to the elimination of the Architectural Review Board Coordinator position and the reduction of the accounting clerk position to part-time, was designed to save costs as the P.M.H.O.A. implemented an expensive system to control the access that residents and non-residents have to the streets of the Palmas del Mar community. *See Figueroa v. Fernandez,* 921 F.Supp. 889, 892–93 (D.P.R.1996) (discussing Puerto Rico's Controlled Access Law in the context of the plaintiff's section 1983 lawsuit against the residential association and its leaders).

On October 22, 1993, the Budget and Finance Committee of the P.M.H.O.A. decided to eliminate Plaintiff's administrative assistant position. Wangen had no input into this decision. Initially, the P.M.H.O.A. intended to eliminate her position on January 1, 1994. However, when Wangen objected and argued that the elimination of Plaintiff's position would create an administrative problem in the office, the P.M.H.O.A. decided to eliminate her position on May 1, 1994 and give Plaintiff a severance payment. The P.M.H.O.A. eliminated the positions of twelve maintenance employees, an accountant, and the administrative assistant. The P.M.H.O.A. decided to keep the Architectural Review Board Coordinator and the Accountant Clerk in charge of accounts receivable.

The P.M.H.O.A. concedes that Plaintiff was discharged a little over two months before it intended to eliminate her position. According to Defendants, they expedited her termination because Plaintiff had become argumentative, overly critical, and disrespectful. Wangen was the person who made the initial decision to accelerate her discharge and the President of the P.M.H.O.A. approved of Plaintiff's premature dismissal.

## II. DISCUSSION:

As a result of Wangen's alleged conduct and Plaintiff's early dismissal, Plaintiff filed an E.E.O.C. complaint and, promptly thereafter, the instant complaint alleging that Defendants created a hostile work environment because of Wangen's sexual harassment and the P.M.H.O.A.'s refusal to implement any prompt corrective action. Plaintiff requests damages against the P.M.H.O.A. and Wangen under Title VII, 42 U.S.C.A. § 2000e–2 (1994) and Puerto Rico's Law 17, P.R.Laws Ann. tit. 29, § 155 *et. seq.* (1991), Law 69, P.R.Laws Ann. tit. 29, § 1321 *et. seq.* (1991), Law 100, P.R.Laws Ann. tit. 29, § 146 *et. seq.* (1985), Article 1802, P.R.Laws Ann. tit. 31, § 5141 (1991), and the privacy clause of the Puerto Rico Constitution.

Defendants moves for summary judgment on four grounds. Defendants argue that: (1) Plaintiff's allegations of hostile environment sexual harassment are not sufficiently severe or pervasive; (2) Plaintiff's timely claims are not independently actionable and Plaintiff's untimely claims are barred by the 300 day statute of limitations; (3) Plaintiff has failed to state a cognizable claim for retaliation; and (4) Plaintiff has failed to state a cognizable sexual harassment claim against Patrick Wangen in either his personal capacity or his official capacity.

The Court shall discuss each of Defendants' arguments seriatim.

## A. Severe or Pervasive:

■ Defendants argue that Plaintiff has failed to establish that Wangen's alleged sexual harassment, even when assumed to be true, was sufficiently "severe or pervasive" to create a hostile or abusive work environment under Title VII. *See* 42 U.S.C.A. § 2000e–2(a)(1) (1994).

Contrary to Defendants' asseverations, the Court finds that Plaintiff's allegations meet the requirement that the harassment was "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (quoting authority omitted). While Defendants wish to focus on only five of the approximately fifteen alleged incidents of sexual harassment to minimize the severity or pervasiveness of the conduct, the Supreme Court in *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 22–24, 114 S.Ct. 367, 371, 126

L.Ed.2d 295 (1993) rejected such an approach.

Instead, by looking at the totality of the circumstances, including (1) the frequency of the alleged conduct, (2) the increasing severity of the alleged conduct, (3) the increasing physical severity of the alleged conduct, and (4) the extent to which it may have interfered with Plaintiff's work performance, the Court finds that there is a genuine issue of material fact in dispute as to whether the supervisor's conduct was sufficiently severe or pervasive to alter Plaintiff's work performance or work environment.

Plaintiff's allegations can not be reduced to mere isolated sexual utterances. She maintains that supervisor Wangen made sexual remarks, "spanked" her on her "buttocks," "touched her neck up and down" while making sexual remarks, commented on the man she was dating, played around with Plaintiff's headset when she put it on, touched her legs while reaching for a diskette file beneath her desk, sent her a card stating that he missed her, and threw pornographic material on her desk asking her to order one of the action movies so they could watch the movie together. Viewed from the objective perspective of a reasonable person, these allegations create a genuine issue of material fact over the severity and pervasiveness of the alleged conduct.

Defendants attempt to substantiate their argument by pointing to several cases where the courts dismissed sexual harassment actions on the grounds that the alleged conduct was not sufficiently severe or pervasive. According to Plaintiff's allegations, however, the conduct of Plaintiff's supervisor was much more severe and pervasive than found in most of these cases. *See Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525, 540–41 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996) (one-time exposure to offensive speech for AIDS awareness which was not directed at the plaintiffs, was couched in humorous as opposed to abusive terms, and in which the plaintiffs did not have to participate was not sufficiently severe or pervasive); *Morgan v. Massachusetts General Hosp.*, 901 F.2d 186, 192–93 (1st Cir.1990) (two isolated instances of homosexual advances by the plaintiff's co-worker were not sufficiently severe or pervasive especially when the conduct was not subjectively problematic from the plaintiff's perspective); *Del Valle Fontanez v. Aponte,* 660 F.Supp. 145, 149 (D.P.R.1987) (single incident of sexual harassment where supervisor pressed his body against the plaintiff in the context of the totality of the circumstances was not sufficiently severe or pervasive); *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 431 (7th Cir.1995) (handful of offensive remarks without any physical touching, without any invitations to go out on a date, and without any exposure to dirty pictures did not constitute harassment); *Ballou v. University of Kansas Medical Center,* 871 F.Supp. 1384, 1389–90 (D.Kan.1994) (supervisor's request to date the plaintiff, telephone calls, request to kiss the plaintiff on her birthday, and other less severe conduct that did not involve physical touching or sexually provocative comments was not sufficiently severe or pervasive); *Ebert v. Lamar Truck Plaza,* 878 F.2d 338, 339 (10th Cir.1989) (use of foul language and sparse touching of employees at 24–hour restaurant was not pervasive or severe and management promptly took corrective action whenever complaints were made); *Scott v. Sears, Roebuck & Co.,* 798 F.2d 210, 213–14 (7th Cir.1986) (offensive conduct of several of the plaintiff's co-workers were isolated, non-repetitive, and did not affect the plaintiff's ability to perform her job).

With regard to the remaining two cases cited by Defendants, *Weiss v. Coca–Cola Bottling Co. of Chicago,* 990 F.2d 333 (7th Cir. 1993) and *McCrackin v. Lab One, Inc.,* 903 F.Supp. 1430 (D.Kan.1995), to the extent that those cases support the dismissal of this sexual harassment action, the Court does not find the reasoning persuasive. Conduct, as alleged in this case, which includes the spanking of an employee's buttocks, repetitive sexual advances, repetitive sexual comments, and the physical touching of an employee's legs and neck may be viewed as sufficiently severe and pervasive to alter an employee's work performance from the perspective of a reasonable person. *See, e.g., Lipsett,* 864 F.2d at 903–905 (sexually lewd

comments, threatening remarks to women, repeated sexual advances, degrading sexually explicit pinups, and sexually charged nicknames for women constituted sufficiently severe and pervasive harassment); *Messina v. Araserve, Inc.*, 906 F.Supp. 34 (D.Mass.1995) (sexually suggestive comments, sexual gestures, and physical touching was sufficiently severe or pervasive and joking with harasser may have been method to cope with hostile environment); *E.E.O.C. v. Horizons Hotel Corp.*, 831 F.Supp. 10, 14 (D.Puerto Rico 1993) (sexual comments about the plaintiff's body and invitations to a hotel room causing the plaintiff to cry on more than one occasion constituted severe and pervasive sexual harassment).

Therefore, viewing the evidence and drawing all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the Court must deny Defendants' motion for summary judgment on the severity and pervasiveness requirement of her sexual harassment claim. On this record, whether Plaintiff's allegations of Wangen's frequent sexual comments and repetitive physically humiliating behavior may have significantly interfered with her work performance is a factual question for the jury to resolve.

*B. Statute of Limitations:*

■ Defendants argue that all of Plaintiff's claims that occurred more than 300 days before she filed a complaint with the Equal Employment Opportunity Commission ("E.E.O.C.") are untimely and, therefore, must be dismissed. Pursuant to 42 U.S.C.A. § 2000e–5(e)(1) (1994), because Puerto Rico is a deferral jurisdiction, Plaintiff must file her complaint "within three hundred days after the alleged unlawful employment practice." *See Cuello Suarez v. Puerto Rico Electric Power Authority*, 798 F.Supp. 876, 886 (D.P.R.1992) (stating that Puerto Rico is a deferral jurisdiction), *aff'd*, 988 F.2d 275 (1st Cir.1993).

■ Plaintiff may recover damages for untimely claims—those alleged unlawful actions occurring over 300 days before Plaintiff filed the E.E.O.C, complaint—if Plaintiff demonstrates that the allegedly discriminatory acts constitute a "continuing violation" of her rights. *Sabree v. United Brotherhood of Carpenters and Joiners*, 921 F.2d 396, 400 (1st Cir.1990). More specifically, to successfully assert that there is a genuine issue of material fact over whether Defendants participated in a serial continuing violation of her rights, Plaintiff must demonstrate: (1) the existence of at least one independently actionable sexual harassment claim within the 300 day limitations period; and (2) that there is a substantial relationship between this timely claim and the series of acts antedating the limitations period. *Id.* at 400–401. In determining whether a substantial relationship exists, courts analyze whether the untimely claims involve the same subject matter as the timely actions, whether the untimely acts are frequent or isolated occurrences, and the degree of permanence of the untimely acts which should trigger an employee's awareness and duty to assert her rights. *Id.* at 402; *Waltman v. International Paper Co.*, 875 F.2d 468, 475 (5th Cir. 1989); *Berry v. Board of Supervisors of Louisiana State University*, 715 F.2d 971, 981 (5th Cir.1983).

Defendants concede that three acts of alleged sexual harassment occurred within 300 days before Plaintiff filed her E.E.O.C. complaint including the pornographic materials incident. During the pornographic materials incident, assuming Plaintiff's allegations are true, supervisor Wangen threw a catalogue of pornographic video cassettes on Plaintiff's desk and stated "there, since you like action movies, choose a couple so we can order them." Pl.'s Opp'n Defs.' Mot., Dkt. No. 4 at 4, ¶ 23. Viewed from the objective perspective of a reasonable person, the Court finds that the pornographic materials when considered with the other alleged hostile actions in the totality of the circumstances constitutes an independently actionable claim of hostile environment sexual harassment. *See Meritor Savings Bank, FSB*, 477 U.S. at 67–68, 106 S.Ct. at 2405–06.

That leaves the viability of Plaintiff's untimely claims. Defendants argue that these claims are unrelated, discrete, and can not be connected to Plaintiff's sexual harassment action. Upon close inspection, Defendants' argument is not persuasive. First, undeniably, Plaintiff's untimely allegations involve the

same subject matter. Each claim revolves around the alleged sexual harassment of Plaintiff's supervisor including sexual innuendos, sexual comments, sexual advances, and physical touching. Second, Plaintiff alleges at least fifteen incidents of hostile and abusive conduct by her supervisor that allegedly occurred between 1989 and 1994. Due to the frequency and the repetitive nature of these incidents, the alleged actions of her supervisor can not be described as isolated occurrences.

This leads to what the First Circuit Court of Appeals has considered the most important test of a substantial relationship: the permanence of the alleged untimely claims. *See Sabree,* 921 F.2d at 402 ("We consider this factor, permanence, the most important of those outlined by the Fifth Circuit."). "Permanence is basically an inquiry into what the plaintiff knew or should have known at the time of the discriminatory act." *Id.* In the context of discrete acts which violate Title VII, such as the loss of a job or the denial of a promotion, the failure to file a complaint within 300 days after learning of the action is fatal. *See Sabree,* 921 F.2d at 402 (allegation of racial discrimination due to denials of applications for employment and applications to transfer positions was a discrete injury known to plaintiff and, therefore, barred by the statute of limitations); *Pakizegi v. First National Bank of Boston,* 831 F.Supp. 901, 910 n. 1 (D.Mass.1993) (allegation of national origin discrimination stemming from the denial of the application to transfer positions was a discrete injury known to plaintiff and, therefore, barred by statute of limitations), *aff'd without opinion,* 56 F.3d 59 (1st Cir.1995).

In the context of a hostile environment sexual harassment action, the failure to file a complaint within 300 days of each alleged sexually hostile act is not fatal to Plaintiff's cause of action. "Acts of harassment that create an offensive or hostile environment generally do not have the same degree of permanence as, for example, the loss of promotion." *Waltman,* 875 F.2d at 476. Although each alleged act of sexual harassment may have infuriated Plaintiff and motivated her to complain at least four times, its the cumulative effect of each of these discrete acts which creates the hostile and abusive environment.

Consequently, a majority of the courts have held that untimely acts of hostile environment sexual harassment should not be dismissed when connected with timely claims of sexual harassment. *See Waltman,* 875 F.2d at 476 (untimely claims of sexual harassment held actionable under continuing violation theory); *Hardy v. Fleming Food Companies, Inc.,* No. Civ.A. H–94–3759, 1996 WL 145463, at \*11–12 (S.D.Tex. March 21, 1996) (same); *Engelmann v. National Broadcasting Co., Inc.,* No. 94 Civ. 5616, 1996 WL 76107, at \*12–15 (S.D.N.Y. February 22, 1996) (same); *Hurley v. Atlantic City Police Dep't,* No. Civ.A. 93–260, 1995 WL 854478, \*7 (D.N.J. August 4, 1995) (same); *Jenson v. Eveleth Taconite Co.,* 824 F.Supp. 847, 877–78 (D.Minn.1993) (same); *West v. Philadelphia Electric Co.,* 45 F.3d 744, 756–57 (3d Cir.1995) (untimely claims of racially hostile environment held actionable under continuing violation theory); *but see Desrosiers v. Great Atlantic & Pacific Tea Co., Inc.,* 885 F.Supp. 308, 312–13 (D.Mass.1995) (untimely claims of hostile environment sexual harassment known by the plaintiff before the E.E.O.C. statute of limitations are not actionable). The majority of the courts follow what is essentially implicit in *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) and *Lipsett v. University of Puerto Rico,* 864 F.2d 881 (1st Cir.1988). Acts of hostile environment sexual harassment occurring years before the plaintiff files a formal complaint with the E.E.O.C. are not only relevant evidence of discrimination but actionable under Title VII.

The Court, therefore, finds that Plaintiff's untimely claims of a hostile environment do not have the degree of permanence that would require Plaintiff to file an E.E.O.C. complaint within 300 days of any of the alleged untimely acts. Plaintiff's complaint sufficiently raises a genuine issue of material fact as to whether Defendants continuously

sexually harassed her until her dismissal from employment.[5]

### C. Retaliation Claim:

Defendants move to dismiss Plaintiff's claim that she was discharged from her employment on February 25, 1994 in retaliation for filing a sexual harassment complaint with the E.E.O.C. eight days earlier on February 17, 1994. Plaintiff asserts that Defendants' retaliatory discharge violates Title VII, 42 U.S.C.A. § 2000e–3(a) (1994) and Puerto Rico's Law 17, P.R. Laws Ann. tit. 29, § 155h (1991). In their arguments, both parties appropriately do not distinguish between the substantive law of Title VII and Puerto Rico's Law 17. From the language of both statutes, it is quite apparent that the substantive law governing retaliatory discharge under Title VII and Puerto Rico's Law 17 is the same.

Both Title VII and Puerto Rico's Law 17 prohibit an employer from discriminating against an employee because he has opposed the employer's alleged unlawful employment practice, including the filing of a sexual harassment complaint with the E.E.O.C. *Wyatt v. City of Boston*, 35 F.3d 13, 15–16 (1st Cir.1994). "Where, as in this case and in retaliation cases generally, there is no direct evidence of the defendant's retaliatory animus, the *McDonnell Douglas* burden-shifting framework is used to allocate and order the burdens of producing evidence." *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir.1996).

■■■ Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Plaintiff has the initial burden of establishing a prima facie case of retaliation. In other words, Plaintiff must demonstrate

that: (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse action. *Fennell*, 83 F.3d at 535. Discharge from employment is not the only adverse employment action covered. It also includes demotions, disadvantageous transfers, refusals to promote, negative job evaluations, and the toleration of harassment by other employees. *Wyatt*, 35 F.3d at 15.

■■■ Assuming Plaintiff's allegations are true and drawing all reasonable inferences from her assertions in her favor, the Court finds that Plaintiff has established a prima facie case of retaliatory discharge. First, Plaintiff was clearly engaged in protective conduct. On February 17, 1994, Plaintiff reasonably believed that the supervisor was sexually harassing her and, therefore, filed a sexual harassment complaint with the E.E.O.C. Second, Plaintiff has produced sufficient evidence indicating that she was discharged from her employment at least two months before her position was scheduled for elimination because of her alleged "argumentative" conduct. An employee's early termination because of alleged misconduct, as opposed to a termination because of an economic decision, is undoubtedly an adverse employment action. Unlike a dismissal where the employee's supervisors regret the decision but willingly offer a favorable recommendation for future employment, a discharge because of a negative evaluation shall have a detrimental impact on the employee's future opportunities.

Finally, Plaintiff has also come forward with sufficient evidence to suggest that her decision to file a complaint with the

**5.** Defendants argue persuasively that the Supreme Court's decision in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) precludes Plaintiff from recovering compensatory damages or punitive damages for any alleged unlawful conduct occurring prior to the effective date of the Civil Rights Act of 1991, November 21, 1991. Plaintiff may only obtain equitable remedies such as back pay and reinstatement based on the pre-enactment conduct. Should the case proceed to trial, the Court shall instruct the jury not to base any compensatory damages or punitive damages

based on the alleged pre-enactment conduct. *See Brinkley–Obu v. Hughes Training, Inc.*, 36 F.3d 336, 354–55 (4th Cir.1994) (plaintiff may not recover compensatory or punitive damages for pre-November 21, 1991 alleged unlawful conduct under Title VII); *Munn v. Mayor and Aldermen of Savannah, Ga.*, 906 F.Supp. 1577, 1582 (S.D.Ga.1995) (same); *O'Neill v. Runyon*, 898 F.Supp. 777, 780–81 (D.Colo.1995) (same); *Mills v. Amoco Performance Products, Inc.*, 872 F.Supp. 975, 985–86 (S.D.Ga.1994) (same); *Munday v. Waste Management of North America, Inc.*, 858 F.Supp. 1364, 1376–77 n. 5 (D.Md. 1994) (same).

E.E.O.C. caused her early discharge. In his deposition, Wangen admitted that he was responsible for expediting her dismissal. He also admitted that he based the decision on her alleged argumentative and disrespectful behavior. Moreover, unlike other similarly discharged employees whose respective positions were eliminated, Plaintiff did not receive any advanced notice of her discharge. At 4:30 P.M. on February 24, 1994, Plaintiff was informed that her dismissal was effective as of 5:00 P.M. that same day. Furthermore, the temporal proximity between Plaintiff's filing of the complaint with the E.E.O.C. and her early dismissal from employment is strongly suggestive of retaliation. *Fennell,* 83 F.3d at 535–36.

Having demonstrated a prima facie case of retaliatory discrimination, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for the early discharge. Defendants produced substantial and largely uncontradicted evidence that they eliminated Plaintiff's position as well as a host of other positions for economic reasons. Defendants also introduce undisputed evidence that her supervisor Wangen expedited her dismissal because he found her "argumentative" and disrespectful.

■ Viewing the evidence from a holistic perspective, considering (a) the timing of Plaintiff's E.E.O.C. complaint and her early dismissal, (b) Defendants lack of notice before dismissing Plaintiff, (c) that the person responsible for her premature dismissal was Plaintiff's supervisor whom she accused eight days earlier of sexual harassment in an E.E.O.C. complaint, and (d) Plaintiff's insistence that Defendants' explanation for her early dismissal is a pretext, the Court finds that the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus. *Fennell,* 83 F.3d at 535.

■ Although Plaintiff has met her burden of producing evidence showing that Defendants terminated her employment before the scheduled elimination of her position because she filed a complaint with the E.E.O.C. and that Defendants' non-discriminatory reason for the decision is a pretext, Plaintiff has failed to meet her burden with respect to

Defendants' decision to eliminate the administrative assistant position. Plaintiff's argument that Defendants' eliminated her position as a result of her decision to file a complaint with the E.E.O.C. is not supported by any evidence.

As in *Fennell,* Plaintiff has failed to produce any evidence placing in doubt Defendants' proof that they intended to eliminate Plaintiff's position before she filed her E.E.O.C. complaint. *Id.* at 536. Two documents specifically and unequivocally indicate that in October 1993 Defendants planned to eliminate Plaintiff's administrative assistant position along with many other positions. *See* Pls.' Opp'n, Dkt. No. 41, Exs. 30, 31. Plaintiff argues that the pre-complaint decision to eliminate her position was subject to change until she filed an E.E.O.C. complaint. Plaintiff asserts that once she filed the E.E.O.C. complaint Defendants made their final determination to eliminate her position. She contrasts their decision to eliminate her position with their decision to keep the Architectural Review Board Coordinator and Account Clerk whom they previously intended to discharge or reduce to part-time employment only. *See* Pls.' Opp'n, Statement of Contested Facts, Dkt. No. 41 at 6, ¶ 41.

Plaintiff's argument, however, is purely speculative. As the Court stated in *Fennell,* the argument is based on what "could have" happened and the fact that other positions that were scheduled for elimination continue to exist "says little or nothing about any changes in circumstance that might have led to reconsideration of [the plaintiff's] job future." *Fennell,* 83 F.3d at 536–37. Plaintiff's remaining arguments second-guess whether Defendants' business decision to eliminate her position was effective. Such an argument does not create a genuine issue of material fact because "[c]ourts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 825 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992).

Consequently, the Court finds that there is no genuine issue of material fact in dispute

regarding Defendants' decision to eliminate Plaintiff's administrative assistant position. As a matter of law, Defendants did not eliminate Plaintiff's position because she filed a complaint with the E.E.O.C. However, there is a genuine issue of material fact in dispute regarding Defendants' decision to dismiss Plaintiff several months before the scheduled elimination of her position. Her premature dismissal based on the negative evaluations submitted by her supervisor, whom she accused of sexual harassment eight days earlier in her complaint with the E.E.O.C., forms a valid basis for a claim of retaliation under Title VII and Puerto Rico's Law 17. Because the evidence supports both Defendants' position that Plaintiff was dismissed prematurely because she was argumentative and Plaintiff's position that this rationale was merely a pretext, viewing the evidence in the light most favorable to Plaintiff, the Court must deny Defendants' motion for summary judgment on Plaintiff's retaliation claim.

**D. Claims Against Supervisor in Individual Capacity:**

■ Co–Defendant Wangen moves for the dismissal of Plaintiff's Title VII claim against him in his personal and official capac-

ities. Wangen argues that he is not an "employer" under Title VII and, therefore, Plaintiff can not sue him for sexual harassment. Although the Court acknowledges that (a) neither the Supreme Court nor the First Circuit Court of Appeals has yet to rule upon this issue and (b) there is a well-known split among the Circuit Courts of Appeals and even within the District Court of Puerto Rico on this issue,[6] this Court shall follow the holding of *Hernandez–Torres v. Intercontinental Trading, Ltd.*, No. Civ. 94–1057, 1994 WL 752591, (D.P.R. December 22, 1994) (dismissing Title VII claims against a supervisor in official and personal capacities). *See also Flamand v. American Int'l Group, Inc.*, 876 F.Supp. 356, 361–64 (D.P.R.1994) (holding that supervisors are not "employers" under ADEA because of the tradition of ADEA rooted in FLSA, the context of the employer-employee relationship within which ADEA is imbedded, and the language of the statute itself).

The debate over the scope of Title VII begins with the statutory definition of "employer." For the purposes of Title VII, an "employer" is "a person engaged in an indus-

---

**6.** The Courts of Appeals for the Second Circuit, the Seventh Circuit, the Ninth Circuit, the Tenth Circuit, the Eleventh Circuit, and the District of Columbia Circuit have concluded that supervisors may be liable under Title VII in their official capacities only. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–17 (2d Cir.1995); *Williams v. Banning*, 72 F.3d 552, 553–55 (7th Cir.1995); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Haynes v. Williams*, 88 F.3d 898, 900–01 (10th Cir.1996); *Cross v. Alabama*, 49 F.3d 1490, 1504 (11th Cir. 1995); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995). While the Fifth Circuit has not decided whether individuals may be sued in their official capacities, it has held that individuals can not be held liable in their personal capacities. *See Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994). Of the Courts of Appeals, only the Fourth Circuit has extended Title VII liability to supervisors in both their official and personal capacities where the supervisors exercise significant control over the plaintiff's hiring, firing, or conditions of employment. *See Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989), *rev'd in part, aff'd in relevant part,* 900 F.2d 27 (4th Cir.1990) (en banc).

The First Circuit, the Third Circuit, the Sixth Circuit, and the Eighth Circuit Courts of Appeals have yet to decide the issue. This often leads to contradictory results in the district courts. There is a split in authority, for example, among the district courts of the First Circuit. *Compare Ruffino v. State Street Bank & Trust Co.*, 908 F.Supp. 1019, 1047–48 (D.Mass.1995) (holding supervisors liable in their personal capacities) *and Weeks v. State of Maine*, 871 F.Supp. 515, 516–17 (D.Me.1994) (same) *and Douglas v. Coca-Cola Bottling Co. of Northern England, Inc.*, 855 F.Supp. 518, 520 (D.N.H.1994) (same) *with Rivera v. Telefonica de Puerto Rico*, 913 F.Supp. 81 (D.P.R.1995) (adopting Report and Recommendation permitting Title VII suit against individual in official capacity only) *with Hernandez–Torres v. Intercontinental Trading, Ltd.*, No. Civ. 94–1057, 1994 WL 752591, (D.P.R. December 22, 1994) (finding no individual liability against supervisor in either official or personal capacity) *and Hernandez v. Miranda Velez*, No. 92–2701, 1994 WL 394855 (D.P.R. July 20, 1994) (same) *and Miller v. CBC Companies, Inc.*, 908 F.Supp. 1054, 1065 (D.N.H.1995) (reversing its position in *Lamirande v. Resolution Trust Corp.*, 834 F.Supp. 526, 528 (D.N.H.1993) and holding that supervisors are not liable in their official or personal capacities).

try ... and any agent of such person." 42 U.S.C.A. § 2000e(b) (1994). Some courts and commentators interpret this language broadly to extend liability to the "agents" including the supervisors of employers. They substantiate this sweeping interpretation with four rationales: (1) the language must be interpreted expansively to effectuate the intent of Title VII which is to eradicate discrimination in the work place;[7] (2) the use of the word "agent" within the definition of "employer" implies an intent to include supervisory liability;[8] (3) the Civil Rights Act of 1991 amended Title VII expanding the damages obtainable to include not only equitable remedies, such as reinstatement and back pay, but also compensatory and punitive damages traditionally associated with actions against individual defendants;[9] and (4) amplifying the application of Title VII to supervisors and other individuals will deter discriminatory conduct by punishing the actual wrongdoers.[10]

As enticing as these rationales may be, a careful inspection of the overall language of Title VII, the legislative history, and the Civil Rights Act of 1991 demonstrates that Congress used the word "agent" in the definition of "employer" to incorporate the doctrine of respondeat superior into the law. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987) (repeating a common rule of statutory interpretation that when analyzing a statute courts should consider the statutory provisions of the whole law). There is absolutely no mention in the statutory language or in the legislative history of Title VII's application to individual defendants.[11] As it had with other civil rights statutes such as section 1981,[12] Congress could have included individuals like supervisors as potential liable parties.

Several provisions of Title VII are clearly inapplicable to individuals. First, section 709(c) requires all employers to maintain records that shed light on potential unlawful employment practices. Undoubtedly this is a task associated with a corporate entity and not an individual supervisor. 42 U.S.C.A. § 2000e–8(c) (1994). Second, section 711 requires employers to post notices about the provisions of Title VII in conspicuous places on the work premises. 42 U.S.C.A. § 2000e–10 (1994). Once again, this is a task directed specifically at corporate entities, not individuals. Finally, the language of the Civil Rights Act of 1991 reflects Congress' pellucid desire to protect small corporate entitles from the burdens of litigating discrimination suits.[13] It shields all defendants with fewer than fifteen employees from liability. 42 U.S.C.A. § 1981a(a)(3) (1994). Moreover, for defendants with more than fourteen employees, it limits the amount compensatory and punitive damages recoverable proportionally to the number of total employees. *Id.* Once again, as with Title VII, there was absolutely no discussion of expanding liability to include

---

7. *Goodstein v. Bombardier Capital, Inc.*, 889 F.Supp. 760, 765 (D.Vt.1995) (the Court later reversed its position following the Second Circuit's *Tomka* decision in *Goodstein v. Bombardier Capital, Inc.*, 167 F.R.D. 662 (D.Vt.1996)); *Weeks*, 871 F.Supp. at 517; Ming K. Ayvas, *The Circuit Split On Title VII Personal Supervisor Liability*, 23 Fordham Urb.L.J. 797, 814–15 (1996).

8. *Ruffino*, 908 F.Supp. at 1047; *Weeks*, 871 F.Supp. at 516; *Douglas*, 855 F.Supp. at 520; *Dreisbach v. Cummins Diesel Engines, Inc.*, 848 F.Supp. 593, 597 (E.D.Pa.1994).

9. *Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172, 1180 (S.D.N.Y.1992).

10. *Weeks*, 871 F.Supp. at 517.

11. *Tomka v. Seiler Corp.*, 66 F.3d at 1314 ("there is a noticeable absence of any mention of agent liability in the floor debates over § 2000e(b)"); Clara J. Montanari, *Supervisor Liability Under Title VII: A "Feel Good" Judicial Decision*, 34 Duq.L.Rev. 351, 360–66 (1996).

12. *See* 42 U.S.C.A. § 1981 (1994); *Al–Khazraji v. Saint Francis College*, 784 F.2d 505, 518 (3d Cir.1986) ("directors, officers, and employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable"), *aff'd on other grounds*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *see also* 42 U.S.C.A. § 1983 (1994) (holding every "person" liable); 42 U.S.C.A. § 1985 (1994) (same); 42 U.S.C.A. § 1986 (1994) (same).

13. *Miller*, 991 F.2d at 587.

individual defendants.[14]  Indeed, it would be nothing short of bizarre if Congress placed such heightened emphasis and concern on limiting the damages recoverable against small corporate entities and, yet simultaneously, silently exposed all individual defendants to unlimited liability.

This Court shall not stretch the definition of "employer" of Title VII and the Civil Rights Act of 1991 beyond Congress' intent in order to achieve a legislative goal.  This Court chooses to leave that role to Congress which, after careful consideration and debate, may or may not wish to include individual defendants such as supervisors within the statutory scheme of Title VII.  Until that day, individual defendants like Patrick Wangen are not liable under Title VII.  Title VII leaves it to the corporate entities, which are held liable for the discriminatory acts of these individuals, to deter the individuals' unlawful employment practices.  This includes not only the corporate entity's own employees but those individuals who work for the employer outside of the company.

Furthermore, as this Court explained in *Flamand* with ADEA, the Court shall not adopt the official/individual capacity distinction to Title VII suits.  Courts developed this bifurcation with the specific intent of holding public officials liable for their clearly established unconstitutional violations.  It is a judicial fiction designed to overcome the sovereign immunity doctrine as codified in the Eleventh Amendment that continues to shield public officials and states from liability in federal court.[15]  Because corporate entities obviously do not have sovereign immunity from suit in federal court, the official/individual capacity distinction in the private employment context is absolutely unnecessary.  Corporate entities, like the P.M.H.O.A., allegedly liable for the discriminatory acts of its employees may be sued directly.  Consequently, the Court hereby dismisses Plaintiff's Title VII claim against her supervisor, Patrick Wangen, in his official and personal capacities with prejudice.  A partial judgment shall be entered accordingly.

■  The dismissal of the Title VII claim leaves Plaintiff's claims against Wangen under Puerto Rico's (1) Law 17, P.R.Laws Ann. tit. 29, § 155 *et. seq.* (1991), (2) Law 69, P.R.Laws Ann. tit. 29, § 1321 *et. seq.* (1991), (3) Law 100, P.R.Laws Ann. tit. 29, § 146 *et. seq.* (1985), (4) Article 1802, P.R.Laws Ann. tit. 31, § 5141 (1991), and (5) violation of Plaintiff's rights to privacy and to dignity under the Puerto Rico Constitution.  Pursuant to 28 U.S.C. § 1367(c) (1996) and *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), the Court declines to exercise pendent jurisdiction over Plaintiff's supplemental state law claims against co-Defendant Patrick Wangen.  *See, e.g., Rivera v. Telefonica de Puerto Rico*, 913 F.Supp. 81, 89 (D.P.R. 1995) (district court dismissing pendent state law claims against co-Defendants).

Although Plaintiff's state law claims against Wangen form a part of the same controversy, the Court finds that the state law claims raise a novel and complex issue of state law.  *See Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995) (it may be "wise to forgo the exercise of supplemental jurisdiction when the state law that undergirds the nonfederal claim is of dubious scope and application.").

Whether a supervisor can be held personally liable for sexually harassing an employee under Law 17, Law 69, and Law 100 is an issue of first impression that has not been resolved by the Puerto Rico courts.[16]  On the one hand, the definition of "employer" under all three statutes explicitly includes agents

---

14. *Tomka*, 66 F.3d at 1315 ("the CRA of 1991 does not contain similar limits on damage awards against agents of an employer, or even address the subject of individual liability.").

15. *Saltz v. Tennessee Dep't of Employment Security*, 976 F.2d 966, 968 (5th Cir.1992); *Laborde–Garcia v. Puerto Rico Telephone Co.*, 734 F.Supp. 46, 48 (D.P.R.1990).

16. Although not raised by the parties, Plaintiff's Puerto Rico law claims presents a second novel question for the Court.  Law 17 which explicitly prohibits sexual harassment in the work place may supersede a sexual harassment action under Law 69 and Law 100.  If that is the case, Plaintiff's Law 69 and Law 100 causes of action would be dismissed with prejudice and Plaintiff would have to proceed with her sexual harassment claim under Law 17 only.

and supervisors. *See* Law 17, P.R.Laws Ann. tit. 29, § 155a(2) (1991) ("Any natural or juridical person of any kind ... including ... their agents and supervisors."); Law 69, P.R.Laws Ann. tit. 29, § 1322(2) (1991) ("includes ... the chief, agent, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer or representative"); Law 100, P.R.Laws Ann. tit. 29, § 151(2) (1985) ("includes ... the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative").

On the other hand, the Supreme Court of Puerto Rico has explained that a similar definition of "employer" in the Minimum Wage Act of 1956 does not hold the supervisor personally liable for a violation of the statute. *See* P.R.Laws Ann. tit. 29, § 246h (1985) (" 'employer'.... includes the chief, director, official, manager, officer, managing partner, administrator, superintendent, supervisor, foreman, overseer, agent, or representative."); *Secretary of Labor v. Ibarra García,* 88 P.R.R. 494, 497–98 (1963). The definition included supervisors "to make the employer responsible for their conduct in connection with the subordinates or employees of the employer." *Ibarra García,* 88 P.R.R. at 498.

Resolving the novel question of whether supervisors can be held personally liable for sexual harassment under Law 17, Law 69, and Law 100 is an issue that will be rendered progressively clear by the course of litigation in the Puerto Rico courts. Consequently, Plaintiff's state law claims against co-Defendant Wangen are hereby dismissed without prejudice. A partial judgment shall be entered accordingly.

### III. CONCLUSION

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has raised a genuine issue of material fact regarding: (1) the severity and the pervasiveness of the alleged sexual harassment by her former supervisor Wangen; (2) whether her supervisor continuously sexually harassed her until her dismissal from employment and, therefore, the statute of limitations does not bar her untimely claims of sexual harassment;

and (3) whether Defendants dismissed her with a negative evaluation more than two months before the scheduled elimination of her position in retaliation for filing an E.E.O.C. complaint. Consequently, the Court hereby denies Defendants' motion for summary judgment on these three grounds. As a matter of law, however, Plaintiff may not bring a Title VII cause of action against her supervisor. The Court, therefore, dismisses Plaintiff's Title VII claim against co-Defendant Patrick Wangen with prejudice. Plaintiff's Puerto Rico law claims against Wangen are dismissed without prejudice.

**IT IS SO ORDERED.**